## Lamberton's Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*Ralph B. Umsted*, Special Deputy Attorney General, and *James H. Duff*, Attorney General, for exceptant.

*George B. Clothier* and *Leon J. Obermayer*, of *Edmonds, Obermayer & Rebmann*, contra.

LADNER, J., August 16, 1944.—The Hon. Robert E. Lamberton was Sheriff of Philadelphia County from 1920 to 1923, inclusive. He died August 22, 1941, leaving a will by which he appointed his wife executrix. At the audit of her account, the Commonwealth, by its Special Deputy Attorney General, made claim against his estate for the sum of $19,912.99, together with increment and interest earned thereon, alleging that the sum claimed had accumulated from unrefunded advance costs and proceeds of sales while decedent was sheriff. The Commonwealth claims this fund should be paid to it without escheat, pursuant to The Fiscal Code of April 9, 1929, P. L. 343, secs. 1309, 1310, 72 PS §§1309, 1310.

In support of its claim, the Commonwealth offered in evidence the testimony of two witnesses, examiners of the Department of Revenue, who reported that they made an examination of 49 sheriff's execution dockets covering the period during which Judge Lamberton served as sheriff. In these dockets were entered writs of execution against real estate, the court term and number, the plaintiff and the defendant, and the amounts advanced by various attorneys for sheriff's costs, the proceeds of sheriff's sale, the distribution of cost and proceeds, and the receipts for amounts distributed. Specimen pages of the dockets were photostated and are annexed to the notes of testimony. The audit thus made showed, and the auditing judge so found, that as of the date Judge Lamberton left the office of sheriff (end of December 1923) there were unclaimed and undistributed funds to the amount of $19,912.99.

There was further testimony that for one year after the expiration of his term distributions were made by

the sheriff's deputy, George De B. Myers, now deceased, by checks signed by Mr. Lamberton and countersigned by Mr. Myers. After that time all claimants were referred to Mr. Lamberton, who had an account book of his own prepared in which were duplicated all unclaimed items, so that he might not need to refer to the execution dockets themselves to verify the correctness of claims presented to him. By agreement of the Commonwealth's attorney, there was accepted as part of the evidence a statement of the attorney for the accountant to the effect that if accountant were called to the stand she would testify that she personally made a diligent search through all the books and the records of decedent that she was able to find to see if she could discover "any records of the check books, bank books, deposits or transfers made from one fund to another, indicating that any funds which decedent may have had as sheriff had been actually transferred to his personal account", but was unable to find "any record of any transfer at any time of any funds which were presumably in the account of Robert E. Lamberton, sheriff, actually transferred into his personal account", and that "for that reason no accounting is offered to the court in the account which is filed, and for that reason the executrix takes the position so far as she now knows there are no funds in her hands which came to Robert E. Lamberton during the time he was sheriff from 1919 [sic] to 1923".

Upon this record the learned auditing judge held that, while the statute of limitations does not run against the Commonwealth, the doctrine of laches is applicable to bar the Commonwealth's claim, and further that the presumption of payment has arisen as to funds which were in the possession of decedent at the expiration of his term of office as sheriff, and dismissed the Commonwealth's claim. To this ruling the Com-

monwealth filed the exceptions charging error in this ruling, which exceptions are now before us for disposition.

The learned Special Deputy Attorney General argued strenuously that, from the very nature of the claim, which is in the nature of escheat, laches should not be imputed to the sovereign, whose power to take possession of ownerless funds within its domain is unquestioned: Escheat of Moneys in Custody of United States Treasury, 322 Pa. 481; U. S. v. Klein, 308 U. S. 618; Commonwealth ex rel. Margiotti v. Cunningham et al., 337 Pa. 289, 297. He argues that, the longer the passage of time within which funds or property remains unclaimed, the clearer necessarily becomes the right to escheat. We agree, and are not inclined to sustain the learned auditing judge's applying the doctrine of laches to bar the Commonwealth's claim of escheat, or, what is tantamount thereto—the right to demand possession without escheat; but we find it unnecessary actually to decide the question because the dismissal of the Commonwealth's claim may be sustained on other grounds.

The Commonwealth's claim of escheat, or the right to take possession in lieu thereof—without escheat— (which, by the very language of the Act of 1929, supra, is made an optional procedure whenever escheat lies) is predicated on the existence of ownerless and unclaimed property or funds. Where the existence of such property or funds is admitted by the one in possession, the Commonwealth's right thereto follows without further proof. The burden is then on the person denying the Commonwealth's right to establish, by proof or otherwise, why the Commonwealth is not entitled thereto. But where the existence of a fund is *not* admitted the burden is necessarily on the Commonwealth first to establish that, in fact, such a fund

exists: Pennsylvania Railroad Company Escheat Case, 348 Pa. 317.

This it sought to do here by merely proving that when Sheriff Lamberton left his office at the end of December 1923 he *then* had in his possession $19,-912.99. Of course, were the sheriff now living, he could have been called upon to show what he did with the money, for payment to the proper parties entitled is ordinarily a matter of defense, unless the presumption of payment after 20 years shifts the burden. But Sheriff Lamberton is dead. His personal representative is under a duty to account only for such assets of her decedent as she has been able to discover, collect, or reduce to possession. It is axiomatic that he who claims the executor should have accounted for more, or that decedent once in his lifetime had in his possession property of claimant, has the burden, as against the executor, of proving that the property was in decedent's possession at the time of his death, and that it passed into the possession of, or should have been recovered by, his personal representative. Here the statement of the executrix was accepted by the Commonwealth in lieu of her testimony to the effect that she made a diligent search, found no funds such as are here claimed, nor record indicating that any funds which decedent may have had as sheriff had actually been transferred to his personal account.

It may well be, as the auditing judge surmises, that during the 18 years that elapsed from the time of his leaving the sheriff's office until his death the funds were paid out by decedent to the parties entitled. Be that as it may, where an executrix has not accounted for escheatable funds, and offers proof that she could find no evidence of the existence of such unpaid funds after decedent's death, the burden is on the Commonwealth first to prove that there were such funds in the

possession of decedent at the time of his death. In this aspect this case is similar to and, in our opinion, is ruled by Pennsylvania Railroad Company Escheat Case, supra.

Since, therefore, the Commonwealth did not discharge its burden of proof, it follows there was no error on the part of the auditing judge in dismissing the claim. The exceptions are dismissed.